IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSE D. SEQUEIRA CASTILLO

           v.

D&P PROFESSIONAL SERVICES, INC.,
et al.

:
:
:   Civil Action No. DKC 14-1992
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving alleged violations of the Fair Labor Standards Act, Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law is a motion for default judgment filed by Plaintiff Jose Domingo Sequeira Castillo. (ECF No. 14). The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

## I.  Background

### A. Factual Background

The following facts are set forth in the amended complaint. (ECF No. 3). Defendants D&P Professional Services, Inc. ("D&P"), Anthony Doukas ("Mr. Doukas"), and Juan Carlos Pena ("Mr. Pena") (collectively, "Defendants") operate a carwash and auto-detailing service. (*Id.* ¶ 2). Mr. Doukas and Mr. Pena are co-owners of D&P. (*Id.* ¶ 11-12). Defendants employed

Plaintiff, Jose Domingo Sequiera Castillo, ("Mr. Castillo" or "Plaintiff"), as a general laborer/car washer from about December 12, 2006 through March 23, 2014. (*Id.* ¶ 11-12). Plaintiff performed landscaping and grounds work duties for Defendants. (*Id.* ¶ 11(a)). At all times relevant, Mr. Doukas and Mr. Pena ran the day to day operations of D&P. (*Id.* ¶ 12-13). Plaintiff alleges that Mr. Doukas and Mr. Pena: (1) had the power to hire, fire, suspend and otherwise discipline Plaintiff; (2) supervised the work duties performed by Plaintiff; (3) set and controlled the work schedule for Plaintiff; and (4) set and determined the rate and method of pay for Plaintiff. (*Id.* ¶ 12-13).

According to the amended complaint, Plaintiff was interviewed by Mr. Pena and Mr. Doukas before he began working for D&P and they explained to him the "rate of pay and what he had to do." (*Id.* ¶ 14). Plaintiff asserts that he was paid a weekly salary regardless of the number of hours that he worked. week, also irrespective of the hours worked. (*Id.*). According to Plaintiff, Defendants had knowledge of all hours Plaintiff worked at all times during his employment.

Plaintiff contends that he ended his employment on March 23, 2014, when "Mr. Pena dismissed Plaintiff from his work area and informed Plaintiff that if he wanted to continue working for Defendants, he would be moved to a new location for less pay."

(*Id.* ¶ 14).   Plaintiff avers that in addition to failing to pay him all of the wages owed to him, Defendants did not pay him $1,300.00 for hours worked during the last two weeks and one day of his employment with D&P.   (*Id.* ¶ 11.d).

Plaintiff has provided an affidavit signed under penalty of perjury stating that from June 20, 2011 until June 1, 2012, he was paid $450 per week for seventy-two hours of work performed. (ECF No. 14-1, at 10).   He further avers that from June 2, 2012 until March 23, 2014, he was paid $600 on a weekly basis for seventy-hours of work performed.   Although he attaches only one earning statement reflecting that he earned $600 from May 4, 2014 until May 10, 2014, his affidavit testimony concerns his pay for all the weeks for which he states he was not paid minimum wage and/or overtime.   (*Id.* at 12).   Specifically, Plaintiff declares in his sworn affidavit that during his employment period, "Defendants never paid [him] time and a half [his] regular rate for the hours [he] worked over forty."   (*Id.* at 10).   He also attaches a spreadsheet showing the number of weeks worked, his weekly pay, and the number of overtime hours worked per week.   (*Id.* at 14).

**B. Procedural Background**

Plaintiff originally filed his complaint on June 20, 2014. (ECF No. 1).   On July 31, 2014, Plaintiff filed an amended five-count complaint against all Defendants, alleging minimum wage

and overtime violations pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") (counts I and III); the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* ("MWHL") (counts II and IV); and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL") (count V).

Service of process was properly effected on all Defendants. When Defendants failed to respond within the requisite time period, Plaintiff moved for entry of default. (ECF No. 10). The clerk entered default on November 4, 2014. (ECF No. 11). Plaintiff filed the pending motion for default judgment on December 22, 2014. (ECF No. 14). To date, Defendants have taken no action in the case.

## II. Standard of Review

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, default judgment may be entered upon the plaintiff's application and

4

notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). "Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E .C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md. 2005). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010).

Where a complaint does not specify an amount, such as here, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (*citing S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2$^d$ Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2$^d$ Cir. 1981)). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

5

## III. Analysis

### A.   Liability

Defendants were served with the amended complaint but have not responded.   Accordingly, all of Plaintiff's allegations as to liability are deemed admitted.

### 1. Minimum Wage Claim

During the applicable time period, the FLSA and MWHL required that employees be paid a minimum wage of $7.25 per hour.   29 U.S.C. § 206 (a)(1);   Md. Code Ann., Lab. & Empl. § 3-413.   Section 206 of the FLSA states that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" wages of at least $6.55 per hour for any work performed prior to July 24, 2009, and $7.25 per hour thereafter.   29 U.S.C § 206(a)(1).[1]   Similarly, for the applicable time period from June, 20 2011 until June 1, 2012, § 3-413 of the MWHL required an employer to "pay an employee a wage that equals the greater of: (1) 85% of the State minimum wage established under this section; or (2) $7.25."   Md.Code Ann., Lab. & Empl. § 3-413.   The MWPCL provides that "each

---

[1] Plaintiff asserts that Defendants engaged in an enterprise and "employed two or more employees who handled goods that had previously moved through commerce such as cleaning materials." (ECF No. 3 ¶ 6).

employer shall pay an employee . . . *all wages due* for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md.Code Ann., Lab. & Empl. § 3-505(a) (emphasis added).

In order to establish a minimum wage violation under the FLSA or the MWHL, Plaintiff must show that he did not receive compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate during a given week. *See Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969). Thus, the relevant analysis is whether the average wage per hour of work completed fell below the minimum wage. *Id.* at 1198. In other words, Plaintiff must demonstrate that for each week between June 20, 2011 and June 1, 2012, when he alleges a minimum wage violation, the total amount paid in a week divided by the total hours worked in a week results in an average hourly rate that falls below the minimum wage.

Accepting as true the well-pled allegations in the amended complaint, Plaintiff has established a minimum wage violation because his hourly rate was $6.25 from June 20, 2011 until June 1, 2012. Additionally, the MWPCL provides that employers "shall pay each employee at least once in every 2 weeks or twice in each month." Md.Code Ann., Lab. & Empl. § 3-502(a)(1)(ii).

7

Plaintiff avers in the amended complaint that he was not paid at all for two weeks and one day worth of work that he completed prior to the end of his employment on March 23, 2014. Accordingly, Plaintiff also has established Defendants' liability under the MWPCL on the basis that they failed to pay him for all wages lawfully due.

### 2. Overtime Claim

The FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Similarly, Section 3-415 of the MWHL requires employers to pay their employees an overtime wage of at least one-and-half times their usual hourly wage for work they perform in excess of forty hours per week. Md.Code Ann., Lab. & Empl. §§ 3-415, 3-420. "The requirements of the MWHL 'mirror' those of the FLSA, and claims under both statutes therefore stand or fall together." *Orellana v. Cienna Properties, LLC*, Civ. No. JKB-11-2515, 2012 WL 203421, at *5 (D.Md. Jan. 23, 2012) (*citing Turner v. Human Genome Science, Inc.*, 292 F.Supp.2d 738, 744 (D.Md. 2003)). Moreover, the Court of Appeals of Maryland reiterated the reach of the MWPCL claim in *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 646 (2014):

Maryland has two wage enforcement laws . . .

> the [M]WHL and the [M]WPCL.  The [M]WHL aims
> to protect Maryland workers by providing a
> minimum wage standard.  The [M]WPCL requires
> an employer to pay its employees regularly
> while employed, and in full at the
> termination of employment.  Read together,
> these statutes allow employees to recover
> unlawfully withheld wages from their
> employer, and provide an employee two
> avenues to do so.

*See also Marshall v. Safeway*, 437 Md. 542, 561-62 (2014)
(holding that the MWPCL generally provides an employee with a
cause of action against an employer, not just for the failure to
pay wages on time, but also for "the refusal of employers to pay
wages lawfully due.").

Plaintiff alleges that he was a non-exempt employee at D&P;
that he worked seventy-two (72) hours per week between June 20,
2011 and March 23, 2014; and that he was paid either $450 per
week or $600 per week, regardless of the number of hours worked.
Accepting as true the well-pled allegations, Plaintiff has
established that Defendants are liable to Plaintiff under the
FLSA, the MWHL, and the MWPCL.

**B.  Damages**

Although Plaintiff did not request a specific sum in the
complaint, Defendants were on notice of Plaintiff's allegations
that he was not paid overtime from June 1, 2012 until March 23,
2014 and that for certain weeks his wages fell below the

applicable minimum wage.[2]   *See, e.g., Labuda v. SEF Stainless Steel, Inc.*, Civ. Action No. RDB-11-1078, 2012 WL 1899417, at *2 (D.Md. May 23, 2012) ("[T]his Court has held that as long as the defendant receives notice that some damages may be awarded, allegations and supporting affidavits regarding damages suffice to support a default judgment for money damages."). Although Plaintiff has established liability under all three statutes, Plaintiff will recover only once for all damages resulting from Defendants' failure to pay him deserved wages.   *See United States v. Rachel*, 289 F.Supp.2d 688, 697 (D.Md. 2003) ("The one wrong, one recovery rules precludes a party from double recovery for a single injury.") (*citing Kramer v. Emche*, 64 Md.App. 27

---

[2] Generally, a Plaintiff must commence an FLSA action within two years of when the cause of action accrued.   29 U.S.C. § 255(a).   If the Plaintiff can prove a "willful violation" of the FLSA, however, the period to commence an FLSA cause of action is extended to three years.   *Id.*   Here, Plaintiff has asserted that Defendants willfully failed to pay him minimum wage for certain weeks and for overtime for the additional thirty-two hours worked weekly, and that they were aware that their actions violated labor laws considering that they have been sued for similar violations in the past.   *See Gonzalez v. D&P Professional Services, Inc.*, Civ. Action No. 1:13cv902, 2014 WL 1285895 (E.D.Va. Mar. 31, 2014).   Plaintiff also asserts that Mr. Doukas and Mr. Pena ran the day to day operations of D&P and set and controlled the rate and method of pay for Plaintiff, as well as his work schedule.   (ECF No. 3 ¶¶ 12-13).   Accordingly, the three year statute of limitations applies to the FLSA minimum wage and overtime claims and damages will be calculated from June 20, 2011 (three years prior to the filing of the complaint) until March 23, 2014 (when Plaintiff ended his employment with D&P).   Moreover, the statute of limitations for MWHL and MWPCL claims is three years.   Md.Code Ann., Cts. & Jud. Proc. § 5-101.

(1985)).

"In cases such as the present one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employee] must show the amount and extent of [his] improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez v. Laws 'R' Us*, Civ. No. DKC-07-2979, 2008 WL 2227353, at *3 (D.Md. May 23, 2008) (*quoting Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)). Moreover, an employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed," and if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Lopez*, 2008 WL 2227353, at *3.

Plaintiff credibly establishes his rate of pay and the number of overtime hours for which he did not receive an overtime premium, albeit by a sworn affidavit instead of live testimony.

**1. Minimum Wage**

29 U.S.C. § 216(b) provides:

> Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected

11

in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . .

Similarly, under the MWHL, "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover: (1) the difference between the wage paid to the employee and the wage required under this subtitle." Md.Code Ann., Lab. & Empl. § 3-427(a)(1).

From June 20, 2011 until June 1, 2012, Plaintiff was entitled to compensation of $25,578 ($7.25 minimum hourly wage, for seventy-two hours worked, for forty-nine weeks). Plaintiff was compensated in the amount of $22,050, however, because he was paid at an hourly rate of $6.25 for seventy-two hours worked for forty-nine weeks. Therefore, Plaintiff is entitled to the difference owed and Defendants are liable to Plaintiff for $3,528 in unpaid wages.

**2. Overtime**

**a. June 20, 2011 to June 1, 2012**

From June 20, 2011 to June 1, 2012, Plaintiff's regular rate of pay was $6.25 per hour ($450.00 in weekly compensation divided by a 72 hour workweek). The regular rate of $6.25 per hour is less than the minimum hourly wage of $7.25 for that time period. "Because plaintiff's regular wages for all the applicable periods are below the minimum wage, the plaintiff's

regular rate for purposes of overtime should have been the full minimum wage." *See Padilla v. Manlapaz,* 643 F.Supp.2d 302, 310 (E.D. N.Y. 2009) (internal citations omitted). Thus, the hourly rate of $7.25 will be applied in calculating overtime wages from June 20, 2011 through June 1, 2012.

Defendants failed to compensate Plaintiff in overtime wages in the amount of $5,684 from June 20, 2011 until June 1, 2012. Although overtime is generally calculated at 150% of the employee's regular rate, Plaintiff has already received his base wage of $6.25 per hour for *all* hours worked, and will be compensated for the difference in what he should have been paid hourly ($7.25 per hour) as part of minimum wage damages. Thus, the overtime amount is calculated at one half of the $7.25 minimum wage multiplied by the total overtime hours worked (thirty two overtime hours for forty-nine weeks), which amounts to $5,684 in overtime for this time period.[3]   (*See* ECF No. 14-1, at 14).

**b. June 2, 2012 to March 23, 2014**

From June 2, 2012 until March 23, 2014, Plaintiff was paid a regular rate of $8.33 per hour for seventy-two hours worked

---

[3] Although Plaintiff uses the same methodology to calculate overtime during the period when his minimum wage fell below $7.25, he miscalculates overtime compensation to be $5,644.80 in his spreadsheet.   The correct damage figure of $5,684 will be awarded.

weekly.   As Plaintiff concedes, because he has already received his base wage of $8.33 per hour for *all* hours worked, he is only due overtime compensation in an amount of fifty percent his regular rate ($4.165) multiplied by the total number of overtime hours worked (thirty two hours a week for ninety-four weeks, for a total of 3,008 overtime hours worked).   Accordingly, Plaintiff is entitled to $12,528.32 in overtime wages for work performed from June 2, 2012 until March 23, 2014.[4]   Plaintiff is owed a total of $18,212.33 ($12,528.32 + $5,684) for overtime performed from June 20, 2011 through March 23, 2014.

### 3. Additional Wages

Plaintiff also asserts that he is entitled to an additional $1,300 as a base salary for two weeks and one day that he worked for D&P before his employment ended on March 23, 2014. Plaintiff asserts in his affidavit that he earned a weekly salary of $600.00 beginning on June 2, 2012 and continuing until the end of his employment on March 23, 2014 for seventy-two hours of work performed weekly, thus he is entitled to $1,200 for two weeks of work.   Plaintiff provides no information, however, as to how many days he worked per week.   Based on the fact that he worked seventy-two hours weekly and was paid $600

---

[4]   Plaintiff again uses the correct methodology, but miscalculates the overtime owed for this time period as $12,513.28.   (ECF No. 14-1, at 14).   The court will award the correct amount.

per week, the best estimate is that he worked roughly twelve hours per day for six days of the week, for approximately $100 per day.   Accordingly, Defendants are liable for an additional $1,300 in unpaid wages to Plaintiff.

### 4. Enhanced Damages

Plaintiff requests that the damages be trebled pursuant to the MWPCL or liquidated pursuant to the FLSA.   In *Clancy*, 2012 WL 5409733, at *7-8, Judge Grimm explained the difference between a liquidated and treble damage award and when each would be appropriate:

> The FLSA provides that an employer who violates 29 U.S.C. § 206(a)(1) or § 207(a)(1), as Defendant has, is liable to the employee for liquidated damages in an amount equivalent to the amount of unpaid minimum wages and overtime compensation, in addition to its liability for the unpaid wages, 29 U.S.C. § 216(b).   The MWPCL provides that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage." Lab. & Empl. § 3-507.1(b).   Treble damages are in lieu of a flat payment of unpaid wages as damages. *See Imgarten v. Bellboy Corp.*, 383 F.Supp.2d 825, 850 (D.Md. 2005) ("[T]he Payment Law's treble damages provision does not authorize treble damages in addition to the unpaid wage. . . . Rather, the statute caps an employee's award at three times that wage.").   Thus, the FLSA provides for a doubling of the amount of unpaid wages as damages, *see* 29 U.S.C. § 216(b), and the MWPCL provides for a tripling of the amount of unpaid wages as damages, *see Imgarten*, 383 F.Supp.2d at 850.

As noted, Plaintiff is "entitled to recover liquidated damages under the FLSA or treble damages under the Maryland Wage Payment and Collection Law, but not both." *Quiroz v. Wilhelp Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D.Md. Nov. 17, 2011). Moreover, "[e]nhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Lopez*, 2008 WL 2227353, at *4. . . .

In *Lopez*, the Court awarded "two times [the plaintiffs'] unpaid regular wages," reasoning that although the defendants "did not offer any evidence of a bona fide dispute" to make liquidated damages inappropriate, plaintiffs "did not offer any evidence of consequential damages suffered because of the underpayments." *Lopez*, 2008 WL 2227353, at *4; *see also Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 800 (D.Md. 2010) (doubling, rather than trebling, unpaid wages where defendants did not offer evidence of a bona fide dispute and plaintiff did not claim consequential damages).

Here, Defendants have failed to appear and present any evidence of a bona fide dispute, but, like the plaintiffs in *Monge* and *Lopez*, Plaintiff also has provided no evidence of any consequential damages suffered as a result of Defendants' violations. *See, e.g., Labuda*, 2012 WL 1899417, at *3 ("[B]ecause there is no evidence relating to a bona fide dispute over the wages owed, the Defendants are subject to a punitive

16

premium, but double-instead of treble-damages are more appropriate in this case."). Based on the foregoing, liquidated damages (as opposed to treble damages) will be awarded here. Defendants are liable to Plaintiff for unpaid minimum wages, overtime, and regular wages in the amount of $23,040.32 (aggregating $3,528, $18,212.32, and $1,300.00). Accordingly, Defendants are liable to Plaintiff in the total amount of $46,080.64.

### 5. Attorney's Fees and Costs

Plaintiff also seeks an award of reasonable costs and attorney's fees. The FLSA directs courts, following a finding of liability, to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The MWHL has a similar provision. Md.Code Ann., Lab. & Empl. § 3-427(d) ("If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs."). Plaintiff has not provided any documentation to support attorney's fees and costs, however. Plaintiff must provide all documentation necessary to make a lodestar determination, including but not limited to: (1) declarations establishing the hours expended by counsel, broken down for each task; and (2) support for the reasonableness of counsel's hourly rate. *See Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990) ("In addition

17

to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted).  Moreover, any request for attorneys' fees must comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be granted in part and denied in part.  Judgment will be entered for Plaintiff in the amount of $46,080.64. Plaintiff may file a petition for attorney's fees and costs within fourteen (14) days.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
